Brent Newell, Petitioner, United States Environmental Protection Agency Today I would like to address three points. First, the Court should give effect to the unambiguous regulation. Second, the regulation is consistent with the best reading of the rather than collaterally attacking the regulation in its briefing, EPA really should have amended the regulation in a notice and comment rulemaking. So to my first point, the regulation unambiguously prohibits any extension of the attainment date. Well, counsel, I'm sorry, but aren't you talking about subpart four? And in subpart four, it doesn't affirmatively state that there can't be extensions. It doesn't say it one way or another. So I guess what I'm wondering is why you then believe, based upon that, when it seems to be ambiguous, why we can't just look at the entirety of the Act, specifically subpart one for guidance? Well, I have two responses to that question, Judge Mendoza. First, EPA already looked at subpart four and subpart one in 2016 when it promulgated this implementing regulation. And it promulgated two sections. One section dealt with setting an attainment date. That's 51.1004. And the other section, 51.1005, provided for certain extensions of attainment dates. And in that regulation, the regulation expressly prohibits the extension. So EPA has already interpreted the statute here and has promulgated the regulation. Under Kaiser, the Court should give effect to that unambiguous regulation, notwithstanding the fact that EPA is making a statutory argument today. So we've held, you know, I mean, the backdrop a little bit here would seem to be the irritated residence precedent from this Court, which allowed EPA to look to subpart one to extend the dates. And so your position, I guess, would be they did that, but in the regulation they sort of bound their hands not to allow extensions. Well, in association with irritated residence, the issue before the Court was what is the initial attainment date? And as I was responding to Judge Mendoza's question, that case and that issue goes to really stage one of this process, which is in 51.1004, setting the initial attainment date. So we agree that association with irritated residence is appropriate precedent for setting the initial attainment date. And EPA agreed with that when it promulgated the regulation in 2016, because the association with irritated residence holding is exactly encapsulated in 51.1004A3. So the issue here now, and it was not addressed in the association of irritated residence case, is whether there is an extension for an area that is already subject to Section 189D. Now, EPA in 2016, this gets to my second part, my second part of the answer to your question, Judge Mendoza. 51.1005 expressly prohibits any extension of the attainment date that EPA has already set. And EPA set this attainment date December 31st, 2023. So having set the applicable attainment date, 51.1005 subsection C says you can't promulgated in 2016 doesn't include any language that allows EPA to grant a one-year extension for an area already subject to a 189D plan. I mean, let's imagine, I know you dispute this, but let's imagine that the statute would have allowed EPA to draft this regulation to allow an extension in the same way that we know from irritated residence that it does allow it to set the date in the first instance. If that's true, why would EPA have done this? Why would they have not have disallowed the extension? It doesn't seem to be an indication in the record as to why you would have taken kind of some of subpart 1's date features, but not all of them. Well, I disagree with the premise of your question that there is authority in the statute. Well, I understand that. But assuming that that, let's assume that premise, and then why would EPA have done it this way? Well, EPA did it this way because the statute doesn't expressly authorize an extension. Now, this is Title 42, Section 7513, provides for certain extensions. It provides for one-year extensions for moderate areas. It provides only one extension for a serious area. And it authorizes EPA to grant no extensions for serious areas already subject to Section 189D. We know that agencies act only with the authority that Congress confers. They do not act with plenary authority subject to congressional restriction. So the Act shouldn't be read as, well, the Act doesn't prohibit EPA from doing this extension. The Act should be read, does EPA have authority to grant such an extension, having already laid out what extensions are permitted? The absence of any authority for a one-year extension means that Congress didn't give EPA any authority to do what it did here within the Act. That is this argument and, you know, kind of a similar argument that was made in Irritated Residence to say, well, it does not, there's no date, new date in Subpart 4, and yet the Court said, no, you can look to Subpart 1. Well, in Irritated Residence, the petitioners were arguing that Section 189D itself lacked an attainment date. And because of that, what was required was a 5% plan that attained as expeditiously as practicable. There was no attainment date within 189D. And EPA had interpreted the statute to, because there wasn't an attainment date, they could go to these general provisions in Subpart 1. The Court agreed with EPA's position and said that because there was no attainment date in 189D, they could look to Subpart 1. This case is fundamentally different than Irritated Residence because Irritated Residence addressed what should the attainment date be, not whether there are extensions. Now, Congress provided, as I mentioned, certain extensions in 7513, and EPA agreed with this when it promulgated the regulation in 2016. It took the Association of Irritated Residence Holding and it put it in Section 51.1004. So the regulation answers the question, what is the attainment date? It takes the Association of Irritated Residence Holding and it puts it into that section. For 51.1005, what extensions are allowed, EPA didn't take anything from the statute to say, oh, areas that are subject to a 189D plan get a one-year extension. There is no authorization in the regulation that affirmatively takes the statutory argument that is being made here and puts it in the regulation. To the contrary, the regulation itself says the opposite. EPA came out and said there are no extensions for areas subject to 189D. Roberts. If we credit your interpretation, what's the remedy in this case? Waxman. The remedy is vacating the extension, remanding the matter to EPA with instructions to make a finding a failure to attain. That implements the statutory scheme, which triggers contingency measures and an obligation to adopt a new plan. Is there an alternate remedy of just remanding without vacating? Well, vacating would allow ---- I understand. Right. Right. That remedy is also available if this Court were to believe that somehow, you know, there was mootness given, you know, changed circumstances on the ground. So remand would allow ---- I understand you're not urging it. I'm just asking. Right. It would prevent California and EPA ---- it would prevent California from requesting any further extensions for other standards, and it would prevent EPA from granting those extensions because, you know, within the mootness world, you know, capable of repetition yet evading review is an exception to mootness. So a remand here would provide relief not just for the issue that's directly here in the Court, but other circumstances which the Petitioners could reasonably be subjected to in the future given the other standards that are about to trigger Section 1809D and be subject to Section 189D. So I think regardless of whether the Court vacates the extension, remand provides an effective remedy. Thanks. I think you're ---- have you gotten to your third point yet? Yeah. You know, EPA makes the argument that to the extent this unambiguous regulation conflicts with their statutory argument, the regulation should give way. That really turns Kaiser on its head because the Court should give effect to the unambiguous regulation. And in that circumstance, there is no extension. But if an agency were to be able to come in in a proceeding where the regulatory language was at issue and argue the Court should ignore what we promulgated, that would put a hole right into the standard of review in Kaiser where the Court, regardless of how much the agency protests that its interpretation makes sense, the Court needs to give effect to the plain language of the regulation. So EPA should not be allowed to collaterally attack its own regulation in a proceeding after promulgating one. Really what EPA should have done here ---- I mean, the question we would be, if the regulation is unambiguous, and of course you're correct, they can't get out of that. But the question is, is it unambiguous? And the regulation refers to the being subject to the requirements of Section 189D of the Act. So why wouldn't we read that to be referring to the background rules that would apply to this, which would be subpart 1, in the absence of timing or extension rules in subpart 4? Respectfully, Judge Bress, that's not what the regulation says. The regulation simply says if an area is subject to Section 189D for having failed to attain, it may not receive any extension. There's no ---- But it says from requesting an extension of the applicable serious attainment date for such areas. So why wouldn't that be referring to subpart 4's extension provisions? It simply says an extension of the applicable serious area attainment date. Right. EPA approved the applicable serious area attainment date already under the regulation. It did so December 31, 2023, under as Association of Irritated Residents directs. So having approved the applicable serious area attainment date, this provision operates unambiguously to prohibit any extension of that date. There is no ambiguity. EPA and the district did not argue that this provision was ambiguous. And take the court through the Kaiser analysis for a genuinely ambiguous regulation. EPA simply spent, and the district, their entire briefing arguing that the statute somehow should control here, even though EPA promulgated the regulation in 2016. Looking at the plain language of the statute, and this is where I think you're trying to go here, Judge Brest, the court determines what that means under Loper-Bright, and the court also considers the Skidmore factors and whether EPA's argument about statutory, the statutory scheme controlling, right? Under Skidmore, the court should give no weight to EPA's statutory argument. This is not a contemporaneous interpretation of the statute. This interpretation came out in 2024, 34 years after the 1990 amendments, eight years after the regulation was implemented, was promulgated in 2016, and the circumstances really indicate a transparent attempt by EPA to authorize California to evade the remedial scheme. You know, data came out showing that there would be a failure to attain in May of 2024. One week later, California requested this extension, this unprecedented extension that had never happened before. So there is no contemporaneous interpretation. There is no prior consistent interpretation. This is something that EPA has made up entirely out of whole cloth that it really could have amended the regulation. If it really believed that the statute authorized this extra period of time for areas subject to Section 189D, EPA could have amended the regulation. It didn't. This ad hoc interpretation that only came about because the remedial scheme would have made the contingency measure House of Cards fall apart, that implicates Skidmore and means that this court should give no weight to EPA's interpretation here and not allow it to collaterally attack the regulation that's unambiguous that it had adopted in 2016. I see that I have four more minutes left. If the court has any more questions, I would be more than happy to address any. Otherwise, I would like to reserve time for rebuttal. Okay. Thank you. Thank you, Your Honor. Good morning. May it please the court. Rachel Martinez for the United States Environmental Protection Agency. The case before the court today presents one sole issue for the court to resolve, whether EPA lawfully relied on its Section 7502 authority to approve California's request for a one-year extension of the attainment date for the 1997 annual PM 2.5 standards. EPA's extension action comports with the Clean Air Act, EPA's implementing regulations, and this court's precedent in air. As such, EPA acted reasonably, and this court should deny the petition for review. Counsel, can you address his last argument? I'm curious what your thoughts are on that, that essentially saying EPA is saying don't look at our regulations, look at the statute. They're saying that that's your argument. And I completely disagree with that. So one thing that's important to note is that EPA's interpretation, unlike petitioners, is completely consistent with both the statute, EPA's implementing regulations, and this court's precedent in air. And I think to really frame this, it's helpful to go through what the statutory structure that we're dealing with is here. So the Clean Air Act sets forth specific planning requirements for these non-attainment areas, which are air quality control regions that have not met the permissible standards of NAAQS. And these non-attainment provisions are designed to get an area from non-attainment to attainment. And when Congress wrote these non-attainment provisions, it built a number of roads for EPA to use to get these areas to attainment. The first one is the 7502 road, which EPA refers to as Subpart 1 in its brief, and this is the general road that's accessible to all pollutants, right? So EPA can use the 7502 general provisions for all non-attainment areas. In addition to this 7502 road, Congress also built pollutant-specific roads for carbon monoxide, ozone, particulate matter, et cetera. Here we're dealing with Section 7513, which is referred to as Subpart 4 in EPA's brief, and this is the road that provides for additional particulate matter-specific requirements. So under the statutory scheme, when an area is on the 7513 road, it starts as a moderate area and then moves on to serious when it misses the moderate area attainment deadline. The 7513 road allows serious areas the option to seek an extension of that road that would extend the serious attainment deadline. But once the road drives off the end of the 7513 road, the area cannot seek an extension of that road. It must park its car and begin this 5% planning process. And this is where the 7513 road ends. But where the whole goal of the NAAQS is to go from non-attainment to attainment, it's illogical that there would be no road to get there. So AIR told us that as an alternative, EPA can switch lanes and use that 7502 road to get to attainment. Now, going back to your question, Judge Mendoza, Section 51.1005C does not preclude the situation that we have here and is perfectly consistent with the statutory scheme. Section 51.1005C was intended to reflect the end of the 7513 road, so where the area reached the end of the road without requesting an extension and must therefore park their car and begin the 5% planning process. Section 51.1005 as a whole is only intended to apply to the areas on the 7513 road. But here, the San Joaquin Valley has already... Where would we get that from looking at the regulation? Yes, so you can... I mean, that's my concern here is that it's a pretty straightforward language. Yes. So the language within the statute that we'd look at, so the regulation itself talks about these extensions that are prohibited. And the language there is set to reflect what the statute has done. And so specifically, 51.100C is reflecting, again, like I said, that end of the road. So that would be Section 7513E of the Clean Air Act, which states that the extensions there only applied to some part, to the attainment date set in Section C. But a 5% plan area, what we have here, would not be set under Subpart C. So it's this reflection that is where the... So you read the phrase, the State is prohibited from requesting an extension of the applicable serious area attainment date to be a reference to Subpart 4? Yes. You can't do that. Yes, correct. So what's your basis for that? You read applicable serious attainment date just textually is linked to 7513? Yes. 7513E, which if you look at the language, it talks about how the extensions are for those attainment dates specified under Subsection C of 7513. And then 7513C only has the moderate area and serious areas here. And so that's not what the 5% plan areas that we have at issue here. I also think the interpretation of this regulation is brought into clarity when you look at the statutory scheme as a whole, and also when you're using air as a reference point. So like I said, air told us that we can use the 7502 generally applicable provisions to set or to change attainment dates where the statute is otherwise silent for these particulate matter specific provisions. And here, the statute is absolutely silent on the circumstances that we have here. And so reasonably, EPA utilized first when it was setting the attainment date, 7502, to set the attainment date. And then while it's driving on this road, you know, it's still here. It used the same exact provisions to set the extension. And this is, like I said, completely consistent with the statute. And one thing that I want to note, Judge Brest, you mentioned earlier that, you know, this is evidence that why would the court, why would EPA bind its own hands on a statutorily conferred discretion? And I think that's really important here. So if you're following along the 7502 road, there is this expressly conferred statutory discretion for EPA to extend attainment deadlines. This is express. Why would EPA limit its own discretion, number one, and why would it do so without saying anything in the implementing regulations? And that's the key here. The PM 2.5 implementing regulations are silent to this provision. If this regulation is doing what Petitioner is saying and is categorically excluding EPA's ability to grant extensions for these 5 percent plan areas, certainly, number one, it would need a very good reason why it was binding its own hands. And it would secondarily need to thoroughly explain what that rationale was in its preambular language or in the PM 2.5 implementing regulations. But that is entirely absent. And one thing that Petitioner has also mentioned is that EPA is collaterally attacking this regulation in its argument. One point I want to make very clear again is EPA is not in any way collaterally attacking its regulation. EPA's position is that this regulation is entirely consistent with the framework that EPA applied here. And this is the correct interpretation and the correct way to marry both the expressly conferred authority by Section 7502 and the regulatory language here. And it's important to note that this Court has already determined that this framework EPA adopted is the best interpretation of the Clean Air Act when it found that EPA's So because this Court in error, in a public decision, has already interpreted the statute's plain text without deferring to EPA, this is controlling law of the  EPA adhered to this framework here. Because the 7513 road does not provide for setting an attainment date for a 5 percent plan area, EPA properly turned onto the 7502 road. And when presented with California's request for extension, EPA properly stayed on this same 7502 road and determined that the same subparagraph that governs the establishment of the attainment date would also permit two one-year extensions. EPA determined that California's extension request met the required criteria, which Petitioners do not challenge here, and therefore reasonably approved the extension. I guess on going back to error, I mean, what your friend on the other side is saying is, well, there was a problem in error, which was that there would be no new deadline. So that needed to be remedied somehow, and there was a statutory basis for remedying it. That's not necessarily true with respect to the extensions. You could either get an extension or not, but you're not in the kind of absurd situation you might have been in an error where there was a duty to do something but no deadline. Well, that may be true. I think there is the rationale that's used in error is still present here. And that's 7513 is silent on the scenario that we have, but Congress gave express direction to EPA about how to deal with the situation. And one thing that I would like to point to is in 7502, the language says this paragraph shall not apply with respect to nonattainment areas for which attainment dates are specifically provided for under other provisions of this part, right? So the pollutant-specific provisions here were passed by Congress after they did these general provisions. Why would Congress leave these general attainment date directions in these general provisions even after they made more pollutant-specific provisions if not to keep them here as a gap-filling exercise, right? And so that's what EPA is doing here, and that's the rationale that's important here from error is that there is absolute statutory silence in 7513 about our current circumstances for the pollutant-specific 7513. And so what EPA is not going to do and what's not appropriate, which is inherent in petitioner's position here, is make something up and do something that there's no statutory authority to do when there is express statutory authority from Congress to do otherwise. I mean, the regulation could have been clearer.  The regulation could have been clearer. I mean, certainly. I think that to be entirely candid, this, like Petitioner recognized, EPA had not experienced — had, to the best of my knowledge, not had a circumstance like this arise yet. And so this is the first time that EPA is applying this framework to a 5 percent plan area seeking an extension. So certainly the regulation could be clearer. It's a shame it's not, but we're working with what we have. And certainly our — EPA's interpretation is the interpretation, again, that is consistent with everything, whereas Petitioner's interpretation has holes. It overrides what Congress gave EPA express authority to do. In this particular case, just going to the Judge Thomas question from earlier, in this particular case, how much does this matter at this point? Because we're talking about a one-year extension and then obviously some time has passed in the interim. Yeah, that's a great question. And that is something that's important to know here, is that first and foremost, this extension was granted after EPA determined that California made a thorough showing that it was close to attainment, right? So the 2023 data showed that it was below the attainment levels in 2023. And even more importantly here, in June of this year, EPA proposed to find that the San Joaquin Valley was in attainment for these PM 2.5 1997 NACs. And EPA expects to issue a final rule of attainment — or a final rule on this at the beginning of next year. And I do think that's an important point of how much does this matter at this point. Where the area may very well have a final finding of attainment in the future, in the near future, this case may become moot at an early — at a soon-to-come date. So one thing — a couple things about AIR that I heard Petitioners say that I just want to address quickly. Again, like I said, it's EPA's position that AIR is binding precedent of this Court in the best interpretation of the Clean Air Act. And Petitioners fail to raise any valid reason for the Court to revisit this framework here. So first, Petitioners argued that AIR does not apply here in its brief because they incorrectly assert that the case only addresses how an attainment date is initially set. But this argument holds no water, where in AIR, the Court references the same subparagraph of 7502 that EPA used here. So Petitioners' narrow view of this case ignores the crux of this Court's decision. EPA may look to 7502 as an alternative road for setting a new attainment deadline where the 7513 road is silent. And that's why it does not only apply to setting an attainment date. Petitioners also argue that because 7513 does not expressly authorize extensions, EPA lacks the authority to issue extensions for 5 percent plans. But this is contrary to the holding in AIR. 7513 does not provide EPA with a mechanism to either set or extend deadlines for 5 percent plan areas. And this is at the center of AIR. The Court recognized that the Clean Air Act provides these two roads to change particulate matter attainment dates. And where one road did not provide for an attainment date, EPA was correct to use the other road. So here, it does not matter that 7513 does not provide for extensions because the authority is expressly conferred upon EPA in 7502. And the last thing, again, like I said, EPA here is not collaterally attacking its regulation. But it is important to note that there is a basic statutory interpretation canon that a regulation should not be construed to nullify or be inconsistent with statutory text. And EPA's interpretation here is consistent with statutory text, whereas Petitioner's Interpretation would limit that text. If for any reason the Court agrees with the Petitioner's Interpretation of 51.1005C, this Court should not construe that to limit EPA's expressly conferred authority under 7502. I see I'm out of time. In sum, EPA properly used its Section 7502 authority to grant this extension. And for the foregoing reasons, EPA's decision was reasonable and consistent with the statute in this Court's precedent. Thank you. Thank you, Ms. Martinez. And we'll hear from the intervener. Thank you, Your Honors. Annette Vellatore for Intervenor San Joaquin Valley Air Pollution Control District. Just a few points to elaborate on EPA's argument. First of all, Petitioner's entire position rests on an isolated, rigid reading of the regulation as an absolute bar to the extension. But that reading really divorces the rule from its statutory context. So we're, from the record I've seen, and you may correct me, I just don't see California asking EPA to go under 7502 and recognizing they were at the end of the road in 7513. Where do we get that? The end of the road, Your Honor, is a function of the 5 percent plan that the district was operating under. It reached the attainment deadline that EPA initially set of December of 2023. And the, that same statute under 172A2C authorizes that additional flexibility where the State is able to show steady measured progress under the Act. And so the State, I think under these circumstances, was entitled to ask EPA to apply that flexibility that's afforded to it under the Act. My question was more to, I understand your argument today, but I'm not seeing that in the record anywhere where somebody says, no, we know we're done with 7513, but let's hop over to 7502. Is that in the record anywhere? I don't know that that explicit request is in the record anywhere. Certainly it's implicit in the request itself, the recognition that the State has that authority under the Clean Air Act. There was a comment made during the administrative process, somebody objecting to this, and EPA explained this is the basis for our action. That's the same basis we're looking at here. I believe EPA did explain that in its final action approving the extension, that it harmonized the rule in response to the comments from petitioners, harmonizing the rule with the Subpart 1 statutory authority that EPA availed itself of in approving of the extension. The Clean Air Act, of course, authorizes EPA to apply its independent authority in Subpart 1 and Section 172A to extend this attainment date. As I mentioned, as to a 5% plan in particular, when the 5% plan has reached its end, when progress and compliance are demonstrated, just as that same statute as this Court recognized authorized EPA to set the initial December 2023 attainment date for the 5% plan. I see I'm out of time here, and so I just want to say that I think that the entire structure, too, I want to make the point that EPA's approval furthers the Clean Air Act's goal of cooperative federalism, and that between the state and the region and EPA working together to advance attainment and resulting in the achievement we have today of an attainment, of the region being in attainment status. Thank you very much. Okay, Mr. Newell. Thank you very much. I'd like to briefly make two points and then answer any additional questions. My friend with the EPA made the point that Section 51.1005 just encapsulates what extensions were authorized by Subpart 4, Section 7513 of Title 42. So what I'm hearing from that side is that the regulation only brings in what the Act says. They use a road metaphor. You know, 7513 has a road, and that's the end of the road. So they can go and get off the road and go do something else and go and look at the Act for authority. But the problem with that metaphor, that road metaphor, and trying to say that 51.1005 is the same as the Act is that that's not what EPA promulgated. You know, 51.1005 has extensions for moderate areas. It has an extension for a serious area. And then it has Subsection C, which is a prohibition on extension for serious areas subject to 189D. So EPA went there when it promulgated this regulation. EPA kept going with the road and interpreted the Act in the way that we are advancing now, that there is no extension for an area subject to 189D already. So that was the first point. The second point is that my friend from EPA is asking the Court to utilize a method of statutory interpretation to override a regulation when a statute is in tension. That's inconsistent with Kaiser. We have an unambiguous regulation, and the agency now is saying, no, really, that's not what we meant to do. What we really meant was what we're saying now in our brief. The unambiguous regulation should control, and the Court should give effect to that regulation. And the third point is I want to kind of get at a question that you asked, Judge Bress, about what record evidence was there. And the record doesn't talk about, oh, we interpret the Act to include, or the regulation to include the 7513 road. The record doesn't say that. In response to comments at Volume 1, Excerpts of Record, page 5, EPA explains for the very first time its interpretation of 51.1005C. And EPA says that, well, that prohibits anything beyond what they could have given when authorizing the initial attainment date. The problem is that's not what they're arguing now. So they're advancing a post hoc rationalization for what the agency did when it granted this extension. They provide no excuse for going beyond the unambiguous language, and the rulemaking doesn't get into anything that would suggest that the regulation doesn't mean exactly what it says. So with that, we respectfully request the Court vacate the extension and remand the matter to EPA with instructions. Thank you very much. Thank you very much. We thank all counsel, and this case is submitted.
judges: THOMAS, BRESS, MENDOZA